ACCEPTED
03-14-00608-CV
4339675
THIRD COURT OF APPEALS
AUSTIN, TEXAS
3/2/2015 4:41:03 PM
JEFFREY D. KYLE
CLERK

## NO. 03-14-00608-CV

IN THE
COURT OF APPEALS FOR THE
THIRD SUPREME JUDICIAL DISTRICT
AT AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
3/2/2015 4:41:03 PM
JEFFREY D. KYLE
Clerk

---

## LINDA NOWLIN, APPELLANT

## V.

## LORI KEATON, APPELLEE

---

APPEAL OF CAUSE C-1-CV-14-006938
FROM THE COUNTY COURT AT LAW #1
OF TRAVIS COUNTY, TEXAS

---

## APPELLANT'S REPLY BRIEF

---

DAVID NOWLIN
ATTORNEY FOR APPELLANT

7301 RR 620 North, Ste. 155, 319
Austin, Texas 78726-4537
Telephone:   (512) 468-4882
Email:       DavidNowlin@me.com

NO ORAL ARGUMENT REQUESTED

## IDENTIFICATION OF THE PARTIES AND COUNSEL

Appellant certifies that the following is a complete list of the parties, attorneys, and all other interested persons regarding this matter:

| | |
|---|---|
| **1. The Appellant in this case is:** | **Linda Nowlin**<br>Nowlin Properties<br>7301 RR 620 North, Ste. 155, 319<br>Austin, Texas 78726-4537 |
| **2. Appellant was represented at trial and on appeal by:** | **David Nowlin**<br>Nowlin Properties<br>7301 RR 620 North, Ste. 155, 319<br>Austin, Texas 78726-4537 |
| **4. The Appellee in this case is:** | **Lori Keaton**<br>The Giving Tree Learning Center<br>15102 Cavalier Canyon Drive<br>Lakeway, Texas 78734 |
| **5. Appellee was represented at trial and on appeal by:** | **Robby Abarca**<br>Attorney at Law<br>P.O. Box 152547<br>Austin, Texas 78715 |

## NOTATION AS TO THE FORM OF CITATION

Citation in this brief will be as follows:

(a) Citation to the Reporter's Record (R) will be to volume and page number, *e.g.*, "2R12" refers to page 12 of the second volume of the Reporter's Record and "SR12" refers to the same page of the supplemental volume.

(b) Citation to the single-volume Clerk's Record (CR) will be to page number only, *e.g.*, "CR15" refers to page 15 of the Clerk's Record.

(c) Citation to the Plaintiff's and Defendant's Exhibits (PX and DX respectively) will be to exhibit and page number, e.g., "2PX1" refers to page 1 of Plaintiff's Exhibit #2. All exhibits in evidence are located, in the third volume of the Reporter's Record.

(d) Citation to the Appellant's and Appellee's Briefs (PB and DB respectively) will be to page number only, e.g., "PB1" refers to page 1 of Appellant's Brief and "DB1" refers to page 1 of Appellee's Brief.

# TABLE OF CONTENTS

Title Page. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .i

Identification of the Parties and Counsel. . . . . . . . . . . . . . . . . . . . . . . . . . . . .ii

Notation as to the Form of Citation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .iii

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .iv

Index of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .v

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .vi

Points of Error. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .vii

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

Summary of Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

    I.     Appellee Misrepresents the Record and the Holding in *E.J. Rohrt* When She States That a Landlord May Not Recover Future Rents When She, Rather Than a Tenant, Terminates a Lease. . . . . . . . . . . . . .4

    II.    Appellee Also Misrepresents Applicable Law When She Argues that Appellant Waived Her Right to Receive Delinquent Rent from Appellee for Time Spent in Possession of the Property. . . . . . . . .8

Prayer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

Appendix. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

# INDEX OF AUTHORITIES

## Cases

*Texas Supreme Court*

*Dearborn Stove Co. v. Caples*,
236 S.W.2d 486 (Tex. 1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

*E.J. Rohrt et al, v. Kelley Manufacturing Company*,
349 S.W.2d 95 (Tex. 1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4, 5, 6

*Sanderson v. Sanderson*,
109 S.W.2d 744 (Tex. 1937) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Texas Courts of Appeals*

*Walling v. Christie Hobby, Inc.*,
54 S.W.2d 186 (Tex.Civ.App.—Galveston 1932, N.W.H.). . . . . . . . . . . . . . .4, 5, 6

*Sargent v. Highlite Broadcasting Co.*,
466 S.W.2d 866 (Tex.Civ.App.—Austin 1971, no writ). . . . . . . . . . . . . . . . . . .8, 9

## Rules

TEX.R.CIV.PROC. 740. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

# STATEMENT OF THE CASE

Appellant filed her suit for forcible detainer (herein referred to alternately as "eviction") in Travis County Justice Court #2 on June 6, 2014. 2R71, CR30. In her petition, Appellant pled damages for "all rents … according to the lease dated 5/1/14". CR30. Additionally, she indicated that attorney fees and court costs were sought in unspecified amounts. Id. On July 2, 2014, judgment was rendered in favor of Appellee. CR11. On or about July 23, 2014, Appellant appealed from that judgment to the Travis County Court at Law #1. CR5.

On August 25, 2014, this cause came to be heard in County Court at Law #1, for trial by jury, which returned a verdict in Appellee's favor. CR144-CR147. On August 28, 2014, Appellant moved the County Court to render judgment notwithstanding the jury's verdict, to grant a new trial and to issue written rulings on her proposed jury questions. CR153-CR175. On September 17, 2014, the court denied all post-judgment motions and rendered judgment in favor of Appellee that Appellant take nothing, noting specifically that Appellant was not entitled to collect the rent in arrears for July and August of 2014. SR5, SR10-SR12, CR176.

Appellant filed her notice of appeal on September 22, 2014, and this appeal ensued. CR177.

# ISSUES PRESENTED

I.     Appellee Misrepresents the Record and the Holding in *E.J. Rohrt* When She States That a Landlord May Not Recover Future Rents When She, Rather Than a Tenant, Terminates a Lease.

II.     Appellee Also Misrepresents Applicable Law When She Argues that Appellant Waived Her Right to Receive Delinquent Rent from Appellee for Time Spent in Possession of the Property.

# STATEMENT OF FACTS

On April 12, 2014, Linda Nowlin (hereinafter named "Appellant") and Lori Keaton (hereinafter named "Appellee") created a Residential Lease Contract (hereinafter named "the Lease") for the rental of residential real property located at 3907 Eck Lane, Austin, Texas 78734. 1PX1, 2R27. The Lease grants to Appellee the right to possess and occupy the subject property only so long as she pays rent for its use and she abides by certain enumerated and specific rules and prohibitions. 1PX1.

In Section 32, "Default by Resident," the Lease provides that "[a]ll monthly rent for the rest of the Lease Contract term or renewal period will be accelerated automatically without notice or demand (before or after acceleration) and will be immediately due and delinquent if, without [Appellant's] written consent[,]" Appellee leaves the property prior to the end of the lease term without paying rent for the entire term, or if Appellee is "judicially evicted or move[s] out when [Appellant] demand[s] because [Appellee has] defaulted." 1PX4.

On June 4, 2014, Appellant posted her first notice to vacate for breach of the Lease, alleging that Appellee was in default as a result of her resisting and attempting to thwart and frustrate Appellant's attempts to repair the property and her intentionally disturbing the comfort and convenience of Appellant and her

1

agent.  2R87-2R88.  The Notice to Vacate stated that "[y]our [Appellant's] residency is terminated effective immediately[,]" and that "you are liable for all rent due under the full term of your contract, damages to the premises, legal fees and any other charges due under the terms of your agreement."  CR32.  Nowhere did it state that any changes were made to the Lease by the issuance of the Notice to Vacate or that the Lease was terminated.  Id.

Appellee was required to make payments of rent to Appellant on the first of each month in the amount of $2,100.00.  1PX1.  She last paid rent on June 3, 2014, for the month of June of 2014, and made no further payment, though she stayed in possession of the property until September 5, 2014.  *See* SR9, *and see* 2R76.  On July 2, 2014, Appellant requested of her banking institution that her deposit account be made inaccessible to Appellee, effectively refusing to accept late payment of rent.  2R41.

In her testimony at trial, Appellee stated that Appellant "told me [Appellee] that she would never accept rent from me and that she would get an eviction against me."  2R108.

## SUMMARY OF ARGUMENT

No general rule of law exists that states that a landlord may not recover future rents if she terminates a lease, or that a tenant and landlord cannot enter into a lease giving the landlord the power to do so, and the case Appellee cites

for this proposition does not recognize such a rule. Rather, it says that the language of the lease controls whether or not the landlord should be permitted to recover future rents after retaking possession as a result of a tenant default and it ruled that the language of the particular lease under review in that case did not preserve that particular landlord's right to do so.

Appellee's arguments regarding future rents are irrelevant as Appellant has not sought future rents in this matter, but rather only those rents due for time Appellee spent in actual possession of the property in July and August of 2014.

Appellant did not terminate the Lease by the issuance of her Notice to Vacate on June 4, 2014, and no language therein can be construed as releasing Appellee from any of her obligations thereunder. Rather, the language of the Notice to Vacate has the opposite effect of reminding Appellee of those obligations.

Appellee's argument that there exists a maxim of contract law that holds that when a party to a contract prevents by wrongful act the performance of an obligation of another party to the contract, that obligation should be deemed fulfilled, and that this maxim supports a conclusion that a landlord who refuses late payment of rent waives the right to receive rent is meritless. The cases Appellee cites in support of this proposition have no bearing on landlord and tenant disputes or the obligations of tenants to pay rent for possession of property.

**ARGUMENT**

**I. APPELLEE MISREPRESENTS THE RECORD AND THE HOLDING IN *E.J. ROHRT* WHEN SHE STATES THAT A LANDLORD MAY NOT RECOVER FUTURE RENTS WHEN SHE, RATHER THAN A TENANT, TERMINATES A LEASE**

In her "Argument 4" in Appellee's Brief, Appellee argues, implicitly, that Appellant is not entitled to recover the rents sought in this matter because she terminated the lease. DB, at 6. Appellee states that a "landlord may not recover future rents stipulated in a lease when the landlord, and not the tenant, terminates a lease[,]" and cites, in support of this proposition, *E.J. Rohrt et al, v. Kelley Manufacturing Company*, 349 S.W.2d 95 (Tex. 1961). Id. No such holding or general statement of law can be found in that case. *Rohrt*, generally.

*Rohrt* is a case about a tenancy under a lease with operative wording that is entirely different from the wording of the lease in this matter. Id. In that lease it was stated that, in the event of a default by the lessee and at the lessor's discretion, the lease might be considered forfeited and that it "shall cease and come to an end as if that were the day originally fixed herein for the expiration of the term hereof[.]" Id, at 96. The Court acknowledged that the general rule in cases of default by tenants is that the landlord may sue for damages (future rents, most often in cases of breach by abandonment) or to cancel the contract (possession, in cases where the renter is still in the property) but not both. *See* id, at 98 (quoting *Walling v. Christie Hobby, Inc.*, 1932, Tex.Civ.App.—

4

Galveston 1932, N.W.H.). It also acknowledged, however, that this general rule does not supersede the terms of a lease that states expressly that a landlord's re-taking possession after a tenant default does not obviate the tenant's obligation to pay future rents for the remainder of the term of the lease. Id (quoting *Walling*).

The Court found, in *Rohrt*, that the language of the specific lease under review indicated that the lease itself should terminate at the landlord's discretion upon the tenant's default and that the remainder of the language of that lease[1] was insufficient to preserve the landlord's right to future rent thereafter. Id, at 98-99. By contrast, the Lease in this matter states clearly that rent "for the rest of the Lease Contract term ... will be accelerated ... and will be immediately due" if the tenant is judicially evicted or if she "move[s] out when we demand because [she has] defaulted." 1PX4.

In other words, rather than stating that the lease will terminate at the land-lord's discretion upon the tenant's default, this Lease states expressly that, when a tenant defaults, the landlord may retake possession and that the remaining rent due on the contract will be accelerated and due immediately. Id. The only ap-plicable holding in *Rohrt*, the case Appellee herself cites in support of her prop-osition that Appellant is not entitled to accelerated future rents, is that the gen-

---

[1] The lease in *Rohrt* stated that at the tenant's default, the landlord could elect to retake possession "without prejudice to any remedies for arrears of rent or breach of covenant" and the Court reasoned that future rents for the remaining unexpired term were not "arrears of rent". Id.

eral rule of law in this area does not supersede the contract and that the language of the Lease, therefore, controls.

It should be noted, however, that Appellee's opinion regarding whether or not Appellant is entitled to future rents is irrelevant. Appellant has not sought future rents in this matter and has requested only those rents due to her for time Appellee spent *in actual possession* of the property.[2] Neither in *Rohrt* nor in any of the cases upon which it relies was delinquent rent for time in possession an issue.[3] *Rohrt*, generally.

Appellee's Argument 4 also relies on her statement that "appellant terminated the lease in her Notice to Vacate dated June 4th, 2014." However, nowhere in that document is it stated that the lease is terminated. CR32, generally. As Appellee appears to acknowledge in her direct quote in this section, the Notice to Vacate states that, "[y]our *residency* is terminated effective immediately." CR32 (emphasis added). It also states, explicitly and clearly, that Appellee re-

---

[2] Appellant's initial filing in the Justice Court was made on June 6, 2014, when Appellee was current on rent, and though it includes language indicating that Appellant sought "all rents and reletting fees according to the lease[,]" Appellant completed the form without the benefit of counsel and was not advised that the Justice Court only had jurisdiction to award damages for rent that was already due at the time of judgment. CR30, *and see* Tex. R. Civ. P. 740. Future rent damages were not pled separately in the trial court, nor argued to the jury, nor included in the Charge of the Court for the jury's consideration, nor mentioned in Appellant's Motion for New Trial or her Motion for Judgment Notwithstanding the Verdict. 2R165-2R175, CR144-CR146, CR170-CR172, CR166.

[3] In *Rohrt*, all delinquent rent had been paid prior to litigation. *Rohrt*, at 96. The *Rohrt* Court relied on *Walling* solely for the portions of the opinion having to do with future rents, but it did mention, in passing, that the *Walling* Court rendered judgment for the landlord in the matter of rent that was delinquent for time spent in possession. Id, at 97-98 (stating that "Judgment was rendered for [the landlord] only for delinquent rentals due as of date of cancellation[.]"). In *Dearborn Stove Co. v. Caples*, it was the lessee who terminated the lease by abandonment and the lessor was ruled entitled to keep future rents already paid for time following the abandonment. Id, at 98 (citing *Dearborn*, 236 S.W.2d 486 (Tex. 1951)).

mains "liable for all rent due under the full term of [her] contract," reminding her of her obligations, discussed above, under the terms of the Lease. Id.

Residency, or possession, is only one component of the Lease, having to do with the privity of estate under this contract for the use of property. Its termination is not equivalent to the termination of the Lease as a whole, which contains myriad other components having to do with the privity of contract thereunder.

Additionally, it should be noted, in brief, that the trial court disposed of the issue of whether or not the lease had been terminated when it issued its Final Judgment denying Appellant the relief she sought in this suit for forcible detainer. CR176. It was *Appellant's* contention that she was entitled to retake possession because of Appellee's default, but it was *Appellee* who prevailed at trial, retaining her right to occupy the property (subject, of course, to this appeal). Id. Unless Appellee now intends to argue that the trial court recognized some right of occupancy that was unconnected to the Lease (such as a transfer of title, for example), it cannot be rationally disputed that the trial court acknowledged implicitly, but necessarily, that the lease was still in force on August 25, 2014, long after Appellee now contends it was terminated by the Notice to Vacate. Id.

Appellee's failure to present to the Court, in a forthright manner, all of the relevant information regarding the contents of the Notice to Vacate, Final Judg-

ment and Lease, and her making an argument that relies upon the omission of the language of those documents highlighted herein, together constitute a deliberate misrepresentation of the record. In similar manner, Appellee's citing *Rohrt* in support of the general statement that a landlord may not recover future rents when she terminates a lease, without qualification or explanation, constitutes a deliberate misrepresentation of the holding in that case.

## II. APPELLEE ALSO MISREPRESENTS APPLICABLE LAW WHEN SHE ARGUES THAT APPELLANT WAIVED HER RIGHT TO RECEIVE DELINQUENT RENT FROM APPELLEE FOR TIME SPENT IN POSSESSION OF THE PROPERTY

In her "Argument 2" in Appellee's Brief, Appellee argues that her obligation to pay rent was fulfilled (presumably forever), though she paid no rent, when Appellant refused to accept rent from her in July and August of 2014, or when Appellant stated that she would no longer accept late rent[4]. DB, at 5. Appellee cites two cases in support of what she terms a "universal maxim" that when a party to a contract prevents performance of an obligation by another party to the contract, the obligation should be considered fulfilled. Id (citing *Sanderson v. Sanderson*, 109 S.W.2d 744 (Tex. 1937) and *Sargent v. Highlite Broadcasting Co.*, 466 S.W.2d 866 (Tex.Civ.App.—Austin 1971, no writ)). Neither of

---

[4] Appellee's brief states, "Appellant stated on July 22 that she would never accept rent from appellee." DB at 5. Though no citation is offered for this assertion, it is presumable that Appellee is referring to her testimony at trial found on 2R108. Appellant's Attorney has found no other reference to any such statement in the record despite diligent search. It should be noted that this statement consists of inadmissible hearsay and that Appellant's Attorney's declining to make a timely objection does not increase its minimal probative value.

the cited cases is applicable to landlord and tenant disputes or has anything to do with the obligation of a tenant to pay rent for time spent in possession of rental property.[5]

Conversely, both cases involve fact scenarios in which one party to a contract prevented the performance of another by *wrongful* act, apparently calculated deliberately to cause the other to breach the contract involuntarily, and, thereby, to remove the first party's obligation to perform. In this case, it is Appellant's contention that Appellee breached the Lease by failing to pay rent *on time* and before any refusal to accept it. No reasoned argument has been or can be made that Appellee's refusing to accept late rent, to the extent that she did, was calculated to do anything other than preserve her argument that Appellee had already breached the Lease by failing to pay it on time. Additionally, no reasoned argument can be made that either of the cases Appellee cites supports her apparent contention that a tenant should be allowed to remain in possession of rental property rent-free when a landlord declines to accept late rent.

---

[5] *Sanderson* involves a contract between a decedent and her final caretaker, whereunder the caretaker was promised the conveyance of a certain piece of real property in exchange for her caring for the decedent until her death. *Sanderson*, generally. The Court ruled that the caretaker was prevented from doing so when she was ejected from the decedent's home eight months into the term of the contract and two months prior to the death of her charge. Id. *Sargent* involves a contract between two broadcasters that was breached by the one when it was unable to obtain a certain license from the FCC only because the other refused to provide to the FCC certain documentation under its control that the commission required for the license. *Sargent*, generally. The Court ruled that because the other prevented the one from performing its obligation, the obligation would be deemed fulfilled. Id.

Appellee's argument constitutes, essentially, an argument that Appellant waived her right to receive rent, though it is not stated as a waiver argument in those express terms. As such, and because Appellant's position regarding waiver is stated in Appellant's Brief,[6] it is not necessary to respond herein to any other portion of Appellee's argument or to ask the Court to spend its time reviewing a reiteration.

Similarly, it is unnecessary to respond to the remainder and main thrust of Appellee's argument, that the entire matter is moot, as Appellant's position on the mootness of the matter is stated in also Appellant's Brief.[7]

---

[6] *See* Appellant's Brief §§ IA, at PB13-PB14, and IIB, at PB28-PB30.
[7] *See* Appellant's Brief § IIA, at PB21-PB26.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellant respectfully requests that the Court reverse the judgment of the trial court and render judgment in Appellant's favor for Appellee's unpaid rent for the months of July and August of 2014, Appellant's reasonable pre-trial attorney fees, costs of court and pre- and post-judgment interest, and that the Court remand this matter to the trial court for a new trial on the issue of trial and post-judgment attorney fees; or, in the alternative, reverse the trial court's judgment and remand this matter to the trial court for a new trial on all issues; or, in the alternative, vacate the trial court's judgment on all issues.

Respectfully submitted,

DAVID NOWLIN


 /s/  David Nowlin_____
State Bar No. 24049196

7301 RR 620 North, Ste. 155, 319
Austin, Texas 78726-4537
Telephone:   (512) 468-4882
Email:        DavidNowlin@me.com

ATTORNEY FOR APPELLANT

11

## CERTIFICATE OF COMPLIANCE

I certify that this brief was prepared using Microsoft Word and that, according to that program's word counting function, the document (excluding the caption, identification of the parties and counsel, table of contents, index of authorities, statement of the case, points of error, certificate of compliance, certificate of service and appendix) contains 2,826 words. The body text is in 14 point, Times New Roman font and the footnotes are in 12 point, Times New Roman font.

 /s/  David Nowlin_____
State Bar No. 24049196

## CERTIFICATE OF SERVICE

I certify that on March 2, 2014, a true and correct copy of Appellant's Reply Brief was served by electronic service on Robby Abarca, the attorney of record for Appellee Lori Keaton, at his email address of record, RPAbarca@AbarcaLawFirm.com.

 /s/  David Nowlin_____
State Bar No. 24049196

# APPENDIX

The following pages constitute the Appendix to Appellant's Reply Brief, and contain:

(A)     The Final Judgment of the Trial Court,

(B)     The Jury Charge and Verdict, and

(C)     The Text of the Rules and Statutory Authority and the Lease Upon Which Appellant's Argument is Based, including:

        (1)     Texas Rule of Civil Procedure 740, and

        (2)     The Lease.

## No. C-1-CV-14-006938

| | | |
|---|---|---|
| Linda Nowlin, | § | IN THE COUNTY COURT |
| Plaintiff, | § | |
| | § | |
| v. | § | OF TRAVIS COUNTY, TEXAS |
| | § | |
| Lori Keaton, | § | |
| Defendant | § | COUNTY COURT NO. 2 |

### FINAL JUDGMENT

On August 25, 2014, this case was called for trial. Plaintiff, Linda Nowlin, represented by counsel announced ready for trial. Defendant, Lori Keaton, represented by counsel announced ready for trial. After a jury was impaneled and sworn, it heard evidence and arguments of counsel. In response to the jury charge, the jury made findings that the Court received, filed, and entered of record. ~~The questions submitted to the jury and the jury's findings are attached as Exhibit A and incorporated by reference.~~

All matters in controversy, legal and factual, were submitted to the Court for its determination. The Court heard the evidence and arguments of counsel and announced its decision for Defendant.

~~The Court orally RENDERED judgment for DEFENDANT on August 25, 2014.~~ This written judgment memorializes that rendition.

1. Accordingly, the Court orders that plaintiff take nothing and that defendant recover court costs from plaintiff.
2. This judgment finally disposes of all claims and all parties, and is ~~not~~ appealable. ~~because this Court lost subject matter jurisdiction of this controversy on September 5, 2014 when Defendant relinquished possession of the premises at 3907 Eck Lane for cause, as Defendant successfully defended herself against the wrongful eviction suit brought by plaintiff in Justice Court, Travis County, Texas, Precinct 2 and again won on appeal in Travis County, Court at Law 1.~~

SIGNED on _Sept 17_, 20_14_.

_____
PRESIDING JUDGE

000904003

176

# CAUSE NO. C-1-CV-14-006938

| | | |
|---|---|---|
| **LINDA NOWLIN** | § | **IN THE COUNTY COURT** |
| | § | |
| | § | **AT LAW NUMBER 1** |
| **v.** | § | |
| | § | |
| **LORI KEATON** | § | **TRAVIS COUNTY, TEXAS** |

## CHARGE OF THE COURT

MEMBERS OF THE JURY:

After the closing arguments, you will go to the jury room to decide the case, answer the questions that are attached, and reach a verdict. You may discuss the case with other jurors only when you are all together in the jury room.

Remember my previous instructions: Do not discuss the case with anyone else, either in person or by any other means. Do not do any independent investigation about the case or conduct any research. Do not look up any words in dictionaries or on the Internet. Do not post information about the case on the Internet. Do not share any special knowledge or experiences with the other jurors. Do not use your phone or any other electronic device during your deliberations for any reason.

Any notes you have taken are for your own personal use. You may take your notes back into the jury room and consult them during deliberations, but do not show or read your notes to your fellow jurors during your deliberations. Your notes are not evidence. Each of you should rely on your independent recollection of the evidence and not be influenced by the fact that another juror has or has not taken notes. You must leave your notes with the bailiff when you are not deliberating. The bailiff will make sure your notes are kept in a safe, secure location and not disclosed to anyone. After you complete your deliberations, the bailiff will collect your notes. When you are released from jury duty, the bailiff will promptly destroy your notes so that nobody can read what you wrote.

Here are the instructions for answering the questions:

1. Do not let bias, prejudice, or sympathy play any part in your decision.
2. Base your answers only on the evidence admitted in court and on the law that is in these instructions and questions. Do not consider or discuss any evidence that was not admitted in the courtroom.
3. You are to make up your own minds about the facts. You are the sole judges of the credibility of the witnesses and the weight to give their testimony. But on matters of law, you must follow all of my instructions.
4. If my instructions use a word in a way that is different from its ordinary meaning, use the meaning I give you, which will be a proper legal definition.
5. All the questions and answers are important. No one should say that any question or answer is not important.

1


000897604

*144*

6. Answer "yes" or "no" to all questions unless you are told otherwise. A "yes" answer must be based on a preponderance of the evidence. Whenever a question requires an answer other than "yes" or "no," your answer must be based on a preponderance of the evidence. The term "preponderance of the evidence" means the greater weight of credible evidence presented in this case. If you do not find that a preponderance of the evidence supports a "yes" answer, then answer "no." A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence. For a fact to be proved by a preponderance of the evidence, you must find that the fact is more likely true than not true.

7. Do not decide who you think should win before you answer the questions and then just answer the questions to match your decision. Answer each question carefully without considering who will win. Do not discuss or consider the effect your answers will have.

8. Do not answer questions by drawing straws or by any method of chance.

9. Some questions might ask you for a dollar amount. Do not agree in advance to decide on a dollar amount by adding up each juror's amount and then figuring the average.

10. Do not trade your answers. For example, do not say, "I will answer this question your way if you answer another question my way."

11. The answers to the questions must be based on the decision of at least 5 of the 6 jurors. The same 5 jurors must agree on every answer. Do not agree to be bound by a vote of anything less than 5 jurors, even if it would be a majority.

As I have said before, if you do not follow these instructions, you will be guilty of juror misconduct, and I might have to order a new trial and start this process over again. This would waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial. If a juror breaks any of these rules, tell that person to stop and report it to me immediately.

A fact may be established by **"DIRECT EVIDENCE"** or by **"CIRCUMSTANTIAL EVIDENCE"** or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.

**Question 1:**

Did Lori Keaton unreasonably refuse to allow Linda Nowlin or her repairers, servicers, contractors, or representatives to enter the house peacefully for the purpose of making repairs, estimating repair or refurbishing costs, or doing preventive maintenance?

Answer "Yes" or "No".

Answer: _____No._____

2

145

**Question 2:**

Did Lori Keaton fail to comply with the lease by failing to pay her rent in a timely manner?

A failure to comply must be material. The circumstances to consider in determining whether a failure to comply is material include:

1. The extent to which the injured party will be deprived of the benefit which she reasonably expected;
2. The extent to which the injured party can be adequately compensated for the part of that benefit of which she will be deprived;
3. The extent to which the party failing to perform or to offer to perform will suffer forfeiture;
4. The likelihood that the party failing to perform or to offer to perform will cure her failure, taking into account the circumstances including any reasonable assurances;
5. The extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

Answer: __No.__

**QUESTION 3:**

What is a reasonable fee for the necessary services of Linda Nowlin's attorney for preparation and trial in this case, stated in dollars and cents?

Answer: __$2300.00__

Presiding Juror:

1. When you go into the jury room to answer the questions, the first thing you will need to do is choose a presiding juror.
2. The presiding juror has these duties:
   a. have the complete charge read aloud if it will be helpful to your deliberations;
   b. preside over your deliberations, meaning manage the discussions, and see that you follow these instructions;
   c. give written questions or comments to the bailiff who will give them to the judge;
   d. write down the answers you agree on;
   e. get the signatures for the verdict certificate; and
   f. notify the bailiff that you have reached a verdict.

Do you understand the duties of the presiding juror? If you do not, please tell me now.

Instructions for Signing the Verdict Certificate:

3

146

1. You may answer the questions on a vote of 5 jurors. The same 5 jurors must agree on every answer in the charge. This means you may not have one group of 5 jurors agree on one answer and a different group of 5 jurors agree on another answer.

2. If 5 jurors agree on every answer, those 5 jurors sign the verdict.

If all 6 of you agree on every answer, you are unanimous and only the presiding juror signs the verdict.

3. All jurors should deliberate on every question. You may end up with all 6 of you agreeing on some answers, while only 5 of you agree on other answers. But when you sign the verdict, only those 5 who agree on every answer will sign the verdict.

Do you understand these instructions? If you do not, please tell me now.

_____
Judge Presiding

4

147

**CAUSE NO. C-1-CV-14-006938**

| | | |
|---|---|---|
| LINDA NOWLIN | § | IN THE COUNTY COURT |
| | § | |
| v. | § | AT LAW NUMBER 1 |
| | § | |
| LORI KEATON | § | TRAVIS COUNTY, TEXAS |

## Verdict Certificate

Check one:

___✓___ Our verdict is unanimous. All 6 of us have agreed to each and every answer. The presiding juror has signed the certificate for all 6 of us.

_____
Signature of Presiding Juror

JEFFREY PAUTLER
Printed Name of Presiding Juror

_____ Our verdict is not unanimous. Five of us have agreed to each and every answer and have signed the certificate below.

SIGNATURE                                          NAME PRINTED

1. _____        _____

2. _____        _____

3. _____        _____

4. _____        _____

5. _____        _____

5

148

# Texas Property Code § 24.002

COMPLAINANT MAY HAVE POSSESSION

The party aggrieved may, at the time of filing his complaint, or thereafter prior to final judgment in the justice court, execute and file a possession bond to be approved by the justice in such amount as the justice may fix as the probable amount of costs of suit and damages which may result to defendant in the event that the suit has been improperly instituted, and conditioned that the plaintiff will pay defendant all such costs and damages as shall be adjudged against plaintiff.

The defendant shall be notified by the justice court that plaintiff has filed a possession bond. Such notice shall be served in the same manner as service of citation and shall inform the defendant of all of the following rules and procedures:

(a)    Defendant may remain in possession if defendant executes and files a counterbond prior to the expiration of six days from the date defendant is served with notice of the filing of plaintiff's bond. Said counterbond shall be approved by the justice and shall be in such amount as the justice may fix as the probable amount of costs of suit and damages which may result to plaintiff in the event possession has been improperly withheld by defendant;

(b)    Defendant is entitled to demand and he shall be granted a trial to be held prior to the expiration of six days from the date defendant is served with notice of the filing of plaintiff's possession bond;

(c)    If defendant does not file a counterbond and if defendant does not demand that trial be held prior to the expiration of said six-day period, the constable of the precinct or the sheriff of the county where the property is situated, shall place the plaintiff in possession of the property promptly after the expiration of six days from the date defendant is served with notice of the filing of plaintiff's possession bond; and

(d)    If, in lieu of a counterbond, defendant demands trial within said six-day period, and if the justice of the peace rules after trial that plaintiff is entitled to possession of the property, the constable orsheriff shall place the plaintiff in possession of the property five days after such determination by the justice of the peace.

This Lease Contract is only valid if filled out before Janua. 014.

# Residential Lease Contract

Today's
Date of Lease Contract: __4/12/14__
(when this Lease Contract is filled out)

*This is a binding contract. Read carefully before signing.*

## Moving In — General Information

1. **PARTIES.** This Lease Contract is between *you*, the resident(s) *(list all people signing the Lease Contract)*:

   __Lori Keaton__

   _____ and *us*, the owner:

   __Linda Nowlin__

   You've agreed to rent the following dwelling *(check one)*: ☑ house, ☐ duplex unit, or ☐ other unit, and any grounds, garage or other improvements located at __3907 Eck Ln__
   _____ *(street address)*
   in __Austin__ _____ *(city)*,
   Texas, __78734__ *(zip code)* for use as a private residence only. The terms "you" and "your" refer to all residents listed above, and a person authorized to act in the event of a sole resident's death. The terms "we," "us," and "our" refer to the owner listed above and not to property managers or anyone else. Written notice to or from our managers constitutes notice to or from us. If anyone else has guaranteed performance of this Lease Contract, a separate Lease Contract Guaranty for each guarantor must be executed.

2. **OCCUPANTS.** The dwelling will be occupied only by you and *(list all other occupants not signing the Lease Contract)*:

   __Levi + DJ Keaton__
   __Robby Abarca__
   __Cristian Abarca__

   No one else may occupy the dwelling. Persons not listed above must not stay in the dwelling for more than __5__ consecutive days without our prior written consent, and no more than twice that many days in any one month. *If the previous space isn't filled in, two days per month is the limit.*

3. **LEASE CONTRACT TERM.** The initial term of the Lease Contract begins on the __1__ day of __May__, __2014__ *(year)*, and ends at midnight the __30__ day of __April__, __2015__ *(year)*. This Lease Contract will automatically renew month-to-month unless either party gives at least __30__ days written notice of termination or intent to move out as required by paragraph 37. *If the number of days isn't filled in, at least 30 days notice is required.*

4. **SECURITY DEPOSIT.** The total security deposit for all residents is $ __N/A__, due on or before the date this Lease Contract is signed. This amount *(check one)*: ☐ does or ☑ does not include an animal deposit. Any animal deposit will be stated in an animal addendum. See paragraphs 41 and 42 for security deposit return information.
   __$2000 Sec. dep. to be xferd at closing__

5. **KEYS, FURNITURE AND AFFIDAVIT OF MOVE-OUT.** You will be provided __1__ dwelling key(s), _____ mailbox key(s), and _____ other access devices for _____. Any resident, occupant, or spouse who, according to a remaining resident's affidavit, has permanently moved out or is under court order not to enter the dwelling, is (at our option) no longer entitled to occupancy, keys, or other access devices. Your dwelling will be *(check one)*: ☐ furnished or ☐ unfurnished.

6. **RENT AND CHARGES.** You will pay $ __2100__ per month for rent, in advance and without demand at __owner's acct at__
   __Wells Fargo Bank__ and payable to ☑ owner or
   ☐ _____
   Prorated rent of $ __N/A__ is due for the remainder of *(check one)*:
   ☐ 1st month or ☐ 2nd month, on _____
   _____ *(year)*. Otherwise, you must pay your rent on or before the 1st day of each month (due date) with no grace period. Cash is unacceptable without our prior written permission. You must not withhold or offset rent unless authorized by statute. We may, at our option, require at any time that you pay all rent and other sums in cash, certified or cashier's check, money order, or one monthly check rather than multiple checks. If you don't pay all rent on or

   before the __3rd__ day of the month, you'll pay an initial late charge of $ __50__ plus a daily late charge of $ __25__ per day after that date until paid in full. Daily late charges will not exceed 15 days for any single month's rent. We will not impose late charges until at least the third day of the month. You'll also pay a charge of $ __50__ for each returned check or rejected electronic payment, plus initial and daily late charges until we receive acceptable payment. Daily late charges will not exceed 15 days for any single month's rent. If you don't pay rent on time, you'll be in default and all remedies under state law and this Lease Contract will be authorized. If you violate the animal restrictions of paragraph 27 or other animal rules, you'll pay an initial charge of $ __100__ per animal *(not to exceed $100 per animal)* and a daily charge of $ __10__ per animal *(not to exceed $10 per day per animal)* from the date the animal was brought into your dwelling until it is finally removed. We'll also have all other remedies for such violation.

7. **UTILITIES/SERVICES.** You'll pay for all utilities and services including electricity, gas, water, wastewater, trash/recycling, cable/satellite, and stormwater/drainage unless indicated in paragraph 10. You'll pay for all related deposits, charges or fees on such utilities and services. You must not allow any utilities (other than cable or Internet) to be cut off or switched for any reason—including disconnection for not paying your bills—until the Lease Contract term or renewal period ends. You must connect utilities in your name, and you must notify the utility provider of your move-out date so the meter can be timely read. If you delay getting it turned on in your name by lease commencement or cause it to be transferred back into our name before you surrender or abandon the dwelling, you'll be liable for a $ __N/A__ charge *(not to exceed $50 per violation)*, plus the actual or estimated cost of the utilities used while the utility should have been connected in your name. If you are in an area open to competition, you may choose or change your retail electric provider at any time. If you qualify, your provider will be the same as ours, unless you choose a different provider. If you choose or change your provider, you must give us written notice. You must pay all applicable provider fees, including any fees to change service back into our name after you move out.

8. **INSURANCE.** Our insurance does not cover the loss of or damage to your personal property. You are *(check one)*:
   ☐ required to buy and maintain renter's or liability insurance *(see attached addendum)*, or
   ☑ not required to buy renter's or liability insurance.
   *If neither is checked, insurance is not required but is still strongly recommended. If not required, we urge you to get your own insurance for losses due to theft, fire, water damage, pipe leaks and other similar occurrences. Renter's insurance does not cover losses due to a flood. Information on renter's insurance is available from the Texas Department of Insurance.*

9. **SECURITY DEVICES. What We Must Provide.** Texas law requires, with some exceptions, that we must provide at no cost to you when occupancy begins: (1) a window latch on each window; (2) a doorviewer (peephole) on each exterior door; (3) a pin lock on each sliding door; (4) either a door handle latch or a security bar on each sliding door; (5) a keyless bolting device (deadbolt) on each exterior door; and (6) either a keyed doorknob lock or a keyed deadbolt lock on one entry door. Keyed lock(s) will be rekeyed after the prior resident moves out. The rekeying will be done either before you move in or within 7 days after you move in, as required by statute. If we fail to install or rekey security devices as required by the Property Code, you have the right to do so and deduct the reasonable cost from your next rent payment under Section 92.165(1), Texas Property Code.

   **What You Are Now Requesting.** Subject to some limitations, under Texas law you may at any time ask us to: (1) install one keyed deadbolt lock on an exterior door if it does not have one; (2) install a security bar on a sliding glass door if it does not have those requests, but you must pay for them. Subject to statutory restrictions on what security devices you may request, you are now requesting us to install or change at your expense: _____

   _____ *If no items filled in, then you are requesting none at this time.*

   **Payment.** We will pay for missing security devices that are required by statute. You will pay for: (1) rekeying that you request (except when we failed to rekey after the previous resident moved out); and (2) repairs or replacements due to misuse or damage by you or your family, occupants, or guests. You must pay immediately after the work is done unless state statute authorizes advance payment. You also must pay for additional or changed security devices you request, in advance or afterward, at our option.

## Special Provisions and "What If" Clauses

10. **SPECIAL PROVISIONS.** The following or attached special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Lease Contract and will supersede any conflicting provisions of this printed Lease Contract form.

    __Owner provides refrigerators__
    __(in kitchen + garage) washer,__
    __dryer and pool table. Of__
    __these, owner will only guar-__
    __antee one refrigerator in__
    __kitchen.__

11. **UNLAWFUL EARLY MOVE-OUT; RELETTING CHARGE.** You'll be liable to us for a reletting charge of $ __1785__ *(not to exceed 85% of the highest monthly rent during the Lease Contract term)* if you:
    (1) fail to move in, or fail to give written move-out notice as required in paragraphs 23 or 37; or
    (2) move out without paying rent in full for the entire Lease Contract term or renewal period; or
    (3) move out at our demand because of your default; or
    (4) are judicially evicted.

    *The reletting charge is not a cancellation fee and does not release you from your obligations under this Lease Contract. See the last paragraph of page 2.*

35

**Not a Release.** The reletting charge is not a Lease Contract cancellation or buyout fee. It is a liquidated amount covering only part of our damages; that is, our time, effort, and expense in finding and processing a replacement. These damages are uncertain and difficult to ascertain—particularly those relating to make ready, inconvenience, paperwork, advertising, showing the dwelling, utilities for showing, checking prospects, overhead, marketing costs, and locator-service fees. You agree that the reletting charge is a reasonable estimate of such damages and that the charge is due whether or not our reletting attempts succeed. If no amount is stipulated, you must pay our actual reletting costs so far as they can be determined. The reletting charge does not release you from continued liability for: future or past-due rent; charges for cleaning, repairing, repainting; or unreturned keys; or other sums due.

12. **DAMAGES AND REIMBURSEMENT.** You must promptly pay or reimburse us for loss, damage, consequential damages, government fines or charges, or cost of repairs or service in the dwelling due to a violation of the Lease Contract or rules, improper use, negligence, other conduct by you or your invitees, guests or occupants; or any other cause not due to our negligence or fault. You will indemnify and hold us harmless from all liability arising from the conduct of you, your invitees, guests, or occupants, or our representatives who perform at your request services not contemplated in this Lease Contract. **Unless the damage or wastewater stoppage is due to our negligence, we're not liable for — and you must pay for — repairs, replacements and damage to the following if occurring during the Lease Contract term or renewal period: (1) damage to doors, windows, or screens; (2) damage from windows or doors left open; and (3) damage from wastewater stoppages caused by improper objects in lines exclusively serving your dwelling.** We may require payment at any time, including advance payment of repairs for which you're liable. Delay in demanding sums you owe is not a waiver.

13. **CONTRACTUAL LIEN AND PROPERTY LEFT IN DWELLING.** All **property in the dwelling is (unless exempt under Section 54.042 of the Texas Property Code) subject to a contractual lien to secure payment of delinquent rent (except as prohibited by Section 2306.6736, Texas Government Code, for owners supported by tax credit allocations).** For this purpose, "dwelling" excludes outside areas but includes interior living areas and exterior patios, balconies, attached garages, and storerooms for your exclusive use.

**Removal After We Exercise Lien for Rent. If your rent is delinquent, our representative may peacefully enter the dwelling and remove and/or store all property subject to lien.** Written notice of entry must be left afterwards in the dwelling in a conspicuous place—plus a list of items removed. The notice must state the amount of delinquent rent and the name, address, and phone number of the person to contact about the amount owed. The notice must also state that the property will be promptly returned when the delinquent rent is fully paid. All property in the dwelling is presumed to be yours unless proven otherwise.

**Removal After Surrender, Abandonment, or Eviction.** We or law officers may remove or store all property remaining in the dwelling or in outside areas (including any vehicles you or any occupant or guest owns or uses) if you are judicially evicted or if you surrender or abandon the dwelling (see definitions in paragraph 42).

**Storage.** We will store property removed under a contractual lien. We may, but have no duty to, store property removed after judicial eviction, surrender, or abandonment of the dwelling. We're not liable for casualty loss, damage, or theft except for property removed under a contractual lien. You must pay reasonable charges for our packing, removing, storing, and selling any property. We have a lien on all property removed and stored after surrender, abandonment, or judicial eviction for all sums you owe, with one exception: Our lien on property listed under Property Code Section 54.042 is limited to charges for packing, removing, and storing.

**Redemption.** If we've seized and stored property under a contractual lien for rent as authorized by the Property Code, you may redeem the property by paying all delinquent rent due at the time of seizure. But if notice of sale (set forth as follows) is given before you seek redemption, you may redeem only by paying the delinquent rent and reasonable charges for packing, removing, and storing. If we've removed and stored property after surrender, abandonment, or judicial eviction, you may redeem only by paying all sums you owe, including rent, late charges, reletting charges, storage, damages, etc.

We may return redeemed property at the place of storage, the management office, or the dwelling (at our option). We may require payment by cash, money order, or certified check.

**Disposition or Sale.** Except for animals and property removed after the death of a sole resident, we may throw away or give to a charitable organization all items of personal property that are: (1) left in the dwelling after surrender or abandonment; or (2) left outside more than 1 hour after a writ of possession is executed, following a judicial eviction. Animals removed after surrender, abandonment, or eviction may be kenneled or turned over to local authorities or humane societies. Property not thrown away or given to charity may be disposed of only by sale, which must be held no sooner than 30 days after written notice of date, time, and place of sale is sent by both regular mail and certified mail (return receipt requested) to your last known address. The notice must itemize the amounts you owe and the name, address, and phone number of the person to contact about the sale, the amount owed, and your right to redeem the property. Sale may be public or private, is subject to any third-party ownership or lien claims, must be to the highest cash bidder, and may be in bulk, in batches, or item-by-item. Proceeds exceeding sums owed must be mailed to you at your last known address within 30 days after sale.

14. **FAILING TO PAY FIRST MONTH'S RENT.** If you don't pay the first month's rent when or before the Lease Contract begins, all future rent will be automatically accelerated without notice and immediately due. We also may end your right of occupancy and recover damages, future rent, reletting charges, attorney's fees, court costs, and other lawful charges. Our rights, remedies, and duties under paragraphs 11 and 32 apply to acceleration under this paragraph.

15. **RENT INCREASES AND LEASE CONTRACT CHANGES.** No rent increases or Lease Contract changes are allowed before the initial Lease Contract term ends, except for changes allowed by any special provisions in paragraph 10, by a written addendum or amendment signed by you and us, or by reasonable changes of our rules allowed under paragraph 18. If, at least 5 days before the advance notice deadline referred to in paragraph 3, we give you written notice of rent increases or Lease Contract changes effective when the Lease Contract term or renewal period ends, this Lease Contract will automatically continue month-to-month with the increased rent or Lease Contract changes. The new modified Lease Contract will begin on the date stated in the notice (without necessity of your signature) unless you give us written move-out notice under paragraph 37. The written move-out notice under paragraph 37 applies only to the end of the current Lease Contract or renewal period.

16. **DELAY OF OCCUPANCY.** If occupancy is or will be delayed for construction, repairs, cleaning, or a previous resident's holding over, we're not responsible for the delay. The Lease Contract will remain in force subject to: (1) abatement of rent on a daily basis during delay; and (2) your right to terminate as set forth below. Termination notice must be in writing. After termination, you are entitled only to refund of deposit(s) and any rent paid. Rent abatement or Lease Contract termination does not apply if delay is for cleaning or repairs that don't prevent you from occupying the dwelling.

If there is a delay and we haven't given notice of delay as set forth immediately below, you may terminate up to the date when the dwelling is ready for occupancy, but not later.

(1) If we give written notice to any of you when or after the Lease Contract begins—and the notice states that occupancy has been delayed because of construction or a previous resident's holding over, and that the dwelling will be ready on a specific date—you may terminate the Lease Contract within 3 days of your receiving the notice, but not later.

(2) If we give written notice to any of you before the effective Lease Contract date and the notice states that construction delay is expected and that the dwelling will be ready for you to occupy on a specific date, you may terminate the Lease Contract within 7 days after any of you receives written notice, but not later. The readiness date is considered the new effective Lease Contract date for all purposes. This new date may not be moved to an earlier date unless we and you agree.

17. **DISCLOSURE RIGHTS.** If someone requests information on you or your rental history for law-enforcement, governmental, or business purposes, we may provide it. At our request, any utility provider may furnish us information about pending or actual connections or disconnections of utility service to your dwelling.

## While You're Living in the Dwelling

18. **POLICIES OR RULES.** You and all guests and occupants must comply with any written rules and policies, including instructions for care of our property. Our rules are considered part of this contract. We may make reasonable changes to written rules, effective immediately upon their distribution to you. These changes must not change any dollar amounts on page 1 of this Lease Contract. You must comply with any subdivision or deed restrictions that apply.

19. **LIMITATIONS ON CONDUCT.** The dwelling and other areas reserved for your private use must be kept clean. Trash must be disposed of at least weekly in appropriate receptacles in accordance with local ordinances. Passageways may be used only for entry or exit. Any swimming pools, spas, storerooms, and similar areas must be used with care in accordance with our rules and posted signs. Glass containers are prohibited in or near pools. You, your occupants, or guests may not anywhere in the dwelling or outside areas use candles or kerosene lamps or heaters without our prior written approval, or solicit business or contributions. Conducting any kind of business (including child care services) in your dwelling is prohibited—except that any lawful business conducted "at home" by computer, mail, or telephone is permissible if customers, clients, patients, or other business associates do not come to your dwelling for business purposes. We may regulate: (1) the use of patios, balconies, and

porches; (2) the conduct of furniture movers and delivery persons; and (3) activities in outside areas.

We may exclude from the property guests or others who, in our judgment, have been violating the law, violating this Lease Contract or any of our rules, or disturbing other persons, neighbors, visitors, or owner representatives. We may also exclude from any outside area a person who refuses to show photo identification or refuses to identify himself or herself as a resident, occupant, or guest of a specific resident.

You will notify us within 15 days if you or any occupants are convicted of any felony, or misdemeanor involving a controlled substance, violence to another person or destruction of property. You also agree to notify us within 15 days if you or any occupants register as a sex offender in any state. Informing us of criminal convictions or sex offender registry does not waive any rights we have against you.

20. **PROHIBITED CONDUCT.** You and your occupants or guests may not engage in the following activities: criminal conduct; behaving in a loud or obnoxious manner; disturbing or threatening the rights, comfort, health, safety, or convenience of others (including our agents and employees) in or near the dwelling; disrupting our business operations; manufacturing, delivering, or possessing a controlled substance or drug paraphernalia; engaging in or threatening violence; possessing a weapon prohibited by state law; discharging a firearm in the

dwelling; displaying or possessing a gun, k ___ or other weapon in or near the dwelling in a way that may alarm oth, ...oring anything in closets having gas appliances; tampering with utilities or telecommunications; bringing hazardous materials into the dwelling; using windows for entry or exit; heating the dwelling with a gas-operated cooking stove or oven; or injuring our reputation by making bad faith allegations against us to others.

**21. PARKING.** We may regulate the time, manner, and place of parking all cars, trucks, motorcycles, bicycles, boats, trailers, and recreational vehicles. Motorcycles or motorized bikes may not be parked inside a dwelling or on sidewalks. We may have unauthorized or illegally parked vehicles towed or booted according to state law at the owner or operator's expense at any time if it:

(1) has a flat tire or is otherwise inoperable
(2) is on jacks, blocks or has wheel(s) missing
(3) takes up more than one parking space, if the dwelling complex has more than one living unit
(4) belongs to a resident or occupant who has surrendered or abandoned the dwelling
(5) blocks another vehicle from exiting
(6) is in a fire lane or designated "no parking" area
(7) is in a space marked for other resident(s) or dwelling(s)
(8) is in any portion of a yard area
(9) is on the grass, sidewalk, or patio, or
(10) has no current license, registration or inspection sticker, and we give you at least 10 days notice that the vehicle will be towed if not removed.

**22. RELEASE OF RESIDENT.** Unless you're entitled to terminate this Lease Contract under paragraphs 10, 16, 23, 31 or 37, you won't be released from this Lease Contract for any reason — including but not limited to voluntary or involuntary school withdrawal or transfer, voluntary or involuntary job transfer, marriage, separation, divorce, reconciliation, loss of co-residents, loss of employment, bad health, death, or property purchase. You may also have the right under Texas law to terminate the Lease Contract in certain situations involving family violence or sexual assault.

**Death of Sole Resident.** If you are the sole resident and die during the Lease Contract term, the Lease Contract may be terminated without penalty by an authorized representative of your estate with at least 30 days written notice. Your estate will be liable for payment of rent until the latter of: (1) the termination date, or (2) until all possessions in the apartment are removed. Your estate will also be liable for all charges and damages to the apartment until it is vacated, and any removal and storage costs.

**23. MILITARY PERSONNEL CLAUSE.** You may have the right under Texas law to terminate the Lease Contract in certain situations involving military deployment or transfer. You may terminate the Lease Contract if you enlist or are drafted or commissioned in the U.S. Armed Forces. You also may terminate the Lease Contract if:

(1) you are (i) a member of the U.S. Armed Forces or reserves on active duty or (ii) a member of the National Guard called to active duty for more than 30 days in response to a national emergency declared by the President; and
(2) you (i) receive orders for permanent change-of-station, (ii) receive orders to deploy with a military unit or as an individual in support of a military operation for 90 days or more, or (iii) are relieved or released from active duty.

After you deliver to us your written termination notice, the Lease Contract will be terminated under this military clause 30 days after the date on which your next rental payment is due. You must furnish us a copy of your military orders, such as permanent change-of-station orders, call-up orders, or deployment orders or letter. Military permission for base housing doesn't constitute a permanent change-of-station order. After your move out, we'll return your security deposit, less lawful deductions. For the purposes of this Lease Contract, orders described in (2) above will only release the resident who qualifies under (1) and (2) above and receives the orders during the Lease Contract term and such resident's spouse or legal dependents living in the resident's household. A co-resident who is not your spouse or dependent cannot terminate under this military clause. Unless you state otherwise in paragraph 10, you represent when signing this Lease Contract that: (1) you do not already have deployment or change-of-station orders; (2) you will not be retiring from the military during the Lease Contract term; and (3) the term of your enlistment or obligation will not end before the Lease Contract term ends. Liquidated damages for making a false representation of the above will be the amount of unpaid rent for the remainder of the lease term when and if you move out, less rents from others received in mitigation under paragraph 32. You must immediately notify us if you are called to active duty or receive deployment or permanent change-of-station orders.

**24. RESIDENT SAFETY AND LOSS.** You and all occupants and guests must exercise due care for your own and others' safety and security, especially in the use of smoke alarms and other detection devices, door and window locks, and other safety or security devices. You agree to make every effort to follow the Security Guidelines on page 5. Window screens are not for security or keeping people from falling out.

**Alarms and Detection Devices.** We'll furnish smoke alarms or other detection devices required by statute, and we'll test them and provide working batteries when you first take possession. After that, you must pay for and replace batteries as needed, unless the law provides otherwise. We may replace dead or missing batteries at your expense, without prior notice to you. You must immediately report alarm or detector malfunctions to us. Neither you nor others may disable alarms or detectors. *If you damage or disable the smoke alarm or remove a battery without replacing it with a working battery, you may be liable to us under Section 92.2611 of the Property Code for $100 plus one month's rent, actual damages, and attorney's fees.* You will also be liable to us and others if you fail to report malfunctions, or any loss, damage, or fines resulting from fire, smoke, or water. Upon request, we will provide, as required by law, a smoke alarm capable of alerting a person with a hearing-impairment disability.

**Loss.** We're not liable to any resident, guest, or occupant for personal injury or damage or loss of personal property or business or personal income from any cause including but not limited to fire, smoke, rain, flood, water leaks, hail, ice, snow, lightning, wind, explosions, interruption of utilities, pipe leaks, theft, negligent or intentional acts of residents, occupants, or guests, or vandalism unless otherwise required by law. We have no duty to remove any ice, sleet, or snow but may remove any amount with or without notice. Unless we instruct otherwise, you must—for 24 hours a day during freezing weather—(1) keep the dwelling heated to at least 50 degrees; (2) keep cabinet and closet doors open; and (3) drip hot and cold water faucets. You'll be liable for damage to our and others' property if damage is caused by broken water pipes due to your violating these requirements.

**Crime or Eme___ y.** Dial 911 or immediately call local medical emergency, fire, ___ce personnel in case of accident, fire, smoke, suspected criminal activity, or other emergency involving imminent harm. You should then contact our representative. You won't treat any of our security measures as an express or implied warranty of security, or as a guarantee against crime or of reduced risk of crime. Unless otherwise provided by law, we're not liable to you or any guests or occupants for injury, damage, or loss to person or property caused by criminal conduct of other persons, including theft, burglary, assault, vandalism, or other crimes. Even if previously provided, we're not obligated to furnish security personnel, patrols, lighting, gates or fences, or other forms of security unless required by statute. We're not responsible for obtaining criminal history checks on any residents, occupants, guests, or contractors in the dwelling. If you or any occupant or guest is affected by a crime, you must make a written report to our representative and to the appropriate local law-enforcement agency. You also must furnish us with the law-enforcement agency's incident report number upon request.

**25. CONDITION OF THE PREMISES AND ALTERATIONS.** You accept the dwelling, fixtures, and furniture as is, except for conditions materially affecting the health or safety of ordinary persons. We disclaim all implied warranties. You'll be given an Inventory & Condition form on or before move-in. Within 48 hours after move-in, you must sign and note on the form all defects or damage and return it to us. Otherwise, everything will be considered to be in a clean, safe, and good working condition.

You must use customary diligence in maintaining the dwelling and not damaging or littering the outside areas. Unless authorized by statute or by us in writing, you must not perform any repairs, painting, wallpapering, carpeting, electrical changes, or otherwise alter our property. No holes or stickers are allowed inside or outside the dwelling. We'll permit a reasonable number of small nail holes for hanging pictures on sheetrock walls and grooves of wood-paneled walls, unless our rules state otherwise. No water furniture, extra phone or television outlets, alarm systems, or lock changes, additions, or rekeying is permitted unless allowed by statute or we've consented in writing. You may install a satellite dish or antenna provided you sign our satellite dish or antenna lease addendum which complies with reasonable restrictions allowed by federal law. You agree not to alter, damage, or remove our property, including alarm systems, detection devices, furniture, telephone and television wiring, screens, locks, and security devices. When you move in, we'll supply light bulbs for fixtures we furnish, including exterior fixtures operated from inside the dwelling; after that, you'll replace them at your expense with bulbs of the same type and wattage. Your improvements to the dwelling (whether or not we consent) become ours unless we agree otherwise in writing.

We are committed to the principles of fair housing. In accordance with fair housing laws, we will make reasonable accommodations to our rules, policies, practices or services, and/or will allow reasonable modifications under such laws to give persons with disabilities access to and use of this dwelling. We may require you to sign an addendum regarding the approval and implementation of such accommodations or modifications, as well as restoration obligations, if any.

**26. REQUESTS, REPAIRS, AND MALFUNCTIONS.** We'll maintain the dwelling in good order and pay for repair and maintenance, subject to the repair procedures set forth below. You must replace air-conditioning filters monthly and keep the yard clean.

**Procedures for Repairs by Us.** *If you or any occupant needs to send a notice or request—for example, for repairs, installations, services, ownership disclosure or security-related matters—IT MUST BE SIGNED AND IN WRITING to our designated representative* (except in case of fire, smoke, gas, explosion, overflowing sewage, uncontrollable running water, electrical shorts, crime in progress, or fair housing accommodation or modification). Our written notes on your oral request do not constitute a written request from you.

Our complying with or responding to any oral request regarding security or non-security matters doesn't waive the strict requirement for written notices under this Lease Contract. You must promptly notify us in writing of: water leaks; mold; electrical problems; malfunctioning lights; broken or missing locks or latches; and other conditions that pose a hazard to property, health, or safety. We may change or install utility lines or equipment serving the dwelling if the work is done reasonably without substantially increasing your utility costs. We may turn off equipment and interrupt utilities as needed to avoid property damage or to perform work. If utilities malfunction or are damaged by fire, water, or similar cause, you must notify us immediately. Air conditioning problems are normally not emergencies. If air conditioning or other equipment malfunctions, you must notify us as soon as possible on a business day. We'll act with customary diligence to make repairs and reconnections, taking into consideration when casualty insurance proceeds are received. Rent will not abate in whole or in part.

If we believe that fire or catastrophic damage is substantial, or that performance of needed repairs poses a danger to you, we may terminate this Lease Contract by giving you at least 5 days written notice. We may also remove personal property if it causes a health or safety hazard. If the Lease Contract is so terminated, we'll refund prorated rent and all deposits, less lawful deductions.

**Repairs and Service Calls.** We will pay for repairs of conditions that materially affect the health or safety of an ordinary resident (i.e. dangerous or hazardous conditions). Otherwise, you'll be responsible for the first $___0___ of any repair or service call.

**Yard Maintenance.** Unless we expressly assume the responsibility below, you must pay for yard maintenance and yard pest control.
(1) Who will keep the lawn mowed and edged, and maintain all plants, trees, shrubs, etc.? ☑ You or ☐ Us
(2) Who will water the lawn and other vegetation? ☑ You or ☐ Us
(3) Who will keep the lawn, flowerbeds, sidewalks, porches, and driveways free of trash and debris? ☑ You or ☐ Us
(4) Who is obligated to fertilize lawn and plants?
☐ You ☐ Us or ☑ Neither
You must promptly report infestations or dying vegetation to us. You may not modify the existing landscape, change any plants, or plant a garden without our prior written approval.

**Interior Pest Control and Trash Receptacles.** Unless paragraph 10 says otherwise, we'll arrange and pay for extermination services for all pests within the dwelling, as needed in our reasonable judgment.
(1) Who will initially pay for outside trash receptacles for your use? ☐ You ☐ Us ☐ City Utility or ☑ Other
(2) If we pay for trash receptacles initially, who must repair or replace them if they're broken or missing? ☐ You or ☐ Us  N/A

Trash receptacles must be kept closed, and... ...t comply with local ordinances regarding trash disposal. We may designate which trash receptacles will be stored on the premises and where they'll be.

27. **ANIMALS.** No animals (including mammals, reptiles, birds, fish, rodents, amphibians, arachnids, and insects) are allowed, even temporarily, anywhere in the dwelling, porches, patios, balconies, or yards (unless we've so authorized in writing). If we allow an animal, you must sign a separate animal addendum and pay an animal deposit. An animal deposit is considered a general security deposit. We will authorize a support animal for a disabled person but will not require an animal deposit. We may require a written statement from a qualified professional verifying the need for the support animal. You must not feed stray or wild animals or allow unauthorized animals to be tied to any porch, tree, or other object on the premises at any time.

If you or any guest or occupant violates animal restrictions (with or without your knowledge), you'll be subject to charges, damages, eviction, and other remedies provided in this Lease Contract. If an animal has been in the dwelling at any time during your term of occupancy (with or without our consent), we'll charge you for all cleaning and repair costs, including defleaing, deodorizing, and shampooing. Initial and daily animal-violation charges and animal-removal charges are liquidated damages for our time, inconvenience, and overhead (except for attorney's fees and litigation costs) in enforcing animal restrictions and rules. We may remove an unauthorized animal by (1) leaving, in a conspicuous place in the dwelling, a 24-hour written notice of intent to remove the animal, and (2) following the procedures of paragraph 28. We may keep or kennel the animal or turn it over to a humane society or local authority. When keeping or kenneling an animal, we won't be liable for loss, harm, sickness, or death of the animal unless due to our negligence. We'll return the animal to you upon request if it has not already been turned over to a humane society or local authority. You must pay for the animal's reasonable care and kenneling charges. We have no lien on the animal for any purpose.

28. **WHEN WE MAY ENTER.** If you or any guest or occupant is present, then repairers, servicers, contractors, our representatives or other persons listed in (2) below may peacefully enter the dwelling at reasonable times for the purposes listed in (2) below. If nobody is in the dwelling, then such persons may enter peacefully and at reasonable times by duplicate or master key (or by breaking a window or other means when necessary) if:
   (1)   written notice of the entry is left in a conspicuous place in the dwelling immediately after the entry; and
   (2)   entry is for: responding to your request; making repairs or

replacements... ...ting; repair or refurbishing costs; performing pest control; doing preventive maintenance; checking for water leaks; changing filters; testing or replacing detection or alarm devices or batteries; retrieving unreturned tools, equipment, or appliances; preventing waste of utilities; exercising our contractual lien; leaving notices; delivering, installing, reconnecting, or replacing appliances, furniture, equipment, or security devices; removing or rekeying unauthorized security devices; removing unauthorized window coverings; stopping excessive noise; removing health or safety hazards (including hazardous materials), or items prohibited under our rules; removing perishable foodstuffs if your electricity is disconnected; removing unauthorized animals; disconnecting utilities involving bona fide repairs, emergencies or construction; retrieving property owned or leased by former residents; inspecting when immediate danger to person or property is reasonably suspected; allowing persons to enter as you authorized in your rental application (if you die, are incarcerated, etc.); allowing entry by a law officer with a search or arrest warrant, or in hot pursuit; showing dwelling to prospective residents (after move-out or vacate notice has been given); or showing the dwelling to government representatives for the limited purpose of determining housing and fire ordinance compliance, and to lenders, appraisers, contractors, prospective buyers, or insurance agents.

29. **MULTIPLE RESIDENTS OR OCCUPANTS.** Each resident is jointly and severally liable for all Lease Contract obligations. If you or any guest or occupant violates the Lease Contract or rules, all residents are considered to have violated the Lease Contract. Our requests and notices (including sale notices) to any resident constitute notice to all residents and occupants. Notices and requests from any resident or occupant constitute notice from all residents. Your notice of Lease Contract termination may only be given by residents. In eviction suits, each resident is considered the agent of all other residents in the dwelling for service of process. Any resident who defaults under this Lease Contract will indemnify the non-defaulting residents and their guarantors.

Security deposit refund check and any deduction itemizations will be by: *(check one)*: ☐ one check jointly payable to all residents and mailed to any one resident we choose, OR
☑ one check payable and mailed to _Lori Keaton_
_____ *(specify name of one resident).*

*If neither is checked, then the refund will be made in one check jointly payable to all residents.*

---

## Replacements

30. **REPLACEMENTS AND SUBLETTING.** Replacing a resident, subletting, or assignment is allowed *only when we consent in writing.* If departing or remaining residents find a replacement resident acceptable to us before moving out and we expressly consent to the replacement, subletting, or assignment, then:
   (1)   a reletting charge *will not* be due;
   (2)   a reasonable administrative (paperwork) fee *will* be due, and a rekeying fee *will* be due if rekeying is requested or required; and
   (3)   the departing and remaining residents *will* remain liable for all Lease Contract obligations for the rest of the original Lease Contract term.

**Procedures for Replacement.** If we approve a replacement resident, then, at our option: (1) the replacement resident must sign this Lease Contract with or without an increase in the total security deposit; or (2) the remaining and replacement residents must sign an entirely new Lease Contract. Unless we agree otherwise in writing, your security deposit will automatically transfer to the replacement resident as of the date we approve. The departing resident will no longer have a right to occupancy or a security-deposit refund, but will remain liable for the remainder of the original Lease Contract term unless we agree otherwise in writing—even if a new Lease Contract is signed.

---

## Responsibilities of Owner and Resident

31. **RESPONSIBILITIES OF OWNER.** We'll act with customary diligence to:
   (1)   maintain fixtures, hot water, heating, and A/C equipment;
   (2)   substantially comply with all applicable laws regarding safety, sanitation, and fair housing; and
   (3)   make all reasonable repairs, subject to paragraph 26 and your obligation to pay for damages for which you are liable.

If we violate any of the above, you may possibly terminate this Lease Contract and exercise other remedies under Texas Property Code Section 92.056 by following this procedure:
   (a)   all rent must be current and you must make a written request for repair or remedy of the condition—after which we'll have a reasonable time for repair or remedy;
   (b)   if we fail to do so, you must make a second written request for the repair or remedy (to make sure that there has been no miscommunication between us)—after which we'll have a reasonable time for the repair or remedy; and
   (c)   if the repair or remedy still hasn't been accomplished within that reasonable time period, you may immediately terminate this Lease Contract by giving us a final written notice. You also may exercise other statutory remedies, including those under Texas Property Code Section 92.0561.

Instead of giving the two written requests referred to above, you may give us one request by certified mail, return receipt requested, or by registered mail—after which we will have a reasonable time for repair or remedy. "Reasonable time" takes into account the nature of the problem and the reasonable availability of materials, labor, and utilities. Your rent must be current at the time of any request. We will refund security deposits and prorated rent as required by law.

32. **DEFAULT BY RESIDENT.** You'll be in default if: (1) you don't pay rent or other amounts that you owe on time; (2) you or any guest or occupant violates this Lease Contract, our rules, or fire, safety, health, or criminal laws, regardless of whether or where arrest or conviction occurs; (3) you abandon the dwelling; (4) you give incorrect or false answers in a rental application; (5) you or any occupant is arrested, charged, detained, convicted, or given deferred adjudication or pretrial diversion for (i) a felony offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marihuana, or drug paraphernalia as defined in the Texas Controlled Substances Act, or (ii) any sex-related crime, including a misdemeanor; (6) any illegal drugs or paraphernalia are found in your dwelling; or (7) you or any occupant, in bad faith, makes an invalid habitability complaint to an official or employee of a utility company or the government.

**Eviction.** *If you default or holdover, we may end your right of occupancy by giving you a 24-hour written notice to vacate.* Notice may be by: (1) regular mail; (2) certified mail, return receipt requested; (3) personal delivery to any resident; (4) personal delivery at the dwelling to any occupant over 16 years old; or (5) affixing the notice to the inside of the dwelling's main entry door. Notice by mail only will be considered delivered on the earlier of: (1) actual delivery, or (2) three days (not counting Sundays or federal holidays) after the notice is deposited in the U.S. Postal Service with postage. Termination of your possession rights or subsequent reletting doesn't release you from liability for future rent or other Lease Contract obligations. After giving

notice to vacate or filing an eviction suit, we may still accept rent or other sums due; the filing or acceptance doesn't waive or diminish our right of eviction, or any other contractual or statutory right. Accepting money at any time doesn't waive our right to damages; past or future rent, or other sums; or to continue with eviction proceedings.

**Acceleration.** All monthly rent for the rest of the Lease Contract term or renewal period will be accelerated automatically without notice or demand (before or after acceleration) and will be immediately due and delinquent if, without our written consent: (1) you move out, remove property in preparing to move out, or give oral or written notice (by you or any occupant) of intent to move out before the Lease Contract term or renewal period ends; and (2) you've not paid all rent for the entire Lease Contract term or renewal period. Such conduct is considered a default for which we need not give you notice. Remaining rent also will be accelerated if you're judicially evicted or move out when we demand because you've defaulted. Acceleration is subject to our mitigation obligations below.

**Holdover.** You or any occupant, invitee, or guest must not hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different move-out date agreed to by the parties in writing). If a holdover occurs, then: (1) holdover rent is due in advance on a daily basis and may become delinquent without notice or demand; (2) rent for the holdover period will be increased by 25% over the then-existing rent, without notice; (3) you'll be liable to us (subject to our mitigation duties) for all rent for the full term of the previously signed Lease Contract of a new resident who can't occupy because of the holdover; and (4) at our option, we may extend the Lease Contract term—for up to one month from the date of notice of Lease Contract extension—by delivering written notice to you or your dwelling while you continue to hold over.

**Other Remedies.** We may report unpaid amounts to credit agencies. If you default and move out early, you will pay us any amounts stated to be rental discounts or concessions agreed to in writing, in addition to other sums due. Upon your default, we have all other legal remedies, including Lease Contract termination and statutory lockout under Section 92.0081, Texas Property Code, except as lockouts and liens are prohibited by Section 2306.6736, Texas Government Code, for owners supported by housing tax credit allocations. A prevailing party may recover reasonable attorney's fees and all other litigation costs from the non-prevailing parties, except a party may not recover attorney's fees and litigation costs in connection with a party's claims seeking personal injury, sentimental, exemplary or punitive damages. We may recover attorney's fees in connection with enforcing our rights under this Lease Contract. You agree that late charges are liquidated damages and a reasonable estimate of such damages for our time, inconvenience, and overhead associated with collecting late rent (but are not for attorney's fees and litigation costs). All unpaid amounts you owe, including judgments, bear 18% interest per year from due date, compounded annually. You must pay all collection-agency fees if you fail to pay all sums due within 10 days after we mail you a letter demanding payment and stating that collection agency fees will be added if you don't pay all sums by that deadline.

**Mitigation of Damages.** If you move out early, you'll be subject to paragraph 11 and all other remedies. We'll exercise customary diligence to relet and minimize damages. We'll credit all subsequent rent that we actually receive from replacement or subsequent residents against your liability for past-due and future rent and other sums due. **PAGE 4 OF 6**

**33. MISCELLANEOUS.** *Neither we nor any of our representatives have made any oral promises, representations, or agreements. This Lease Contract is the entire agreement between you and us. Our representatives (including management personnel, employees, and agents) have no authority to waive, amend, or terminate this Lease Contract or any part of it, unless in writing, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives unless in writing.* No action or omission by us will be considered a waiver of our rights or of any subsequent violation, default, or time or place of performance. Our not enforcing or belatedly enforcing written-notice requirements, rental due dates, acceleration, liens, or other rights isn't a waiver under any circumstances. Except when notice or demand is required by statute, you waive any notice and demand for performance from us if you default. Written notice to or from our managers constitutes notice to or from us. Any person giving a notice under this Lease Contract should retain a copy of the memo, letter, or fax that was given, as well as any fax transmittal verification. Fax or electronic signatures are binding. All notices must be signed. Notices may **not** be given by email or other electronic transmission.

Exercising one remedy won't constitute an election or waiver of other remedies. Insurance subrogation is waived by all parties. All remedies are cumulative. No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our behalf. This Lease Contract binds subsequent owners. Neither an invalid clause nor the omission of initials on any page invalidates this Lease Contract. All notices and documents may be in English and, at our option, in any language that you read or speak. All provisions regarding our non-liability and non-duty apply to our employees, agents, and management companies. This Lease Contract is subordinate to existing and future recorded mortgages, unless the owner's lender chooses otherwise. All Lease Contract obligations must be performed in the county where the dwelling is located.

We may deactivate or not install keyless bolting devices on your doors if: (1) you or an occupant in the dwelling is over 55 or disabled, and (2) the requirements of Section 92.153(e) or (f), Texas Property Code are satisfied.

Utilities may be used only for normal household purposes and must not be wasted. If your electricity is ever interrupted, you must use only battery-operated lighting.

**34. PAYMENTS.** Payment of all sums is an independent covenant. At our option and without notice, we may apply money received (other than sale proceeds under paragraph 13 or utility payments subject to government regulation) first to any of your unpaid obligations, then to current rent—regardless of notations on checks or money orders and regardless of when the obligations arose. All sums other than rent are due upon our demand. After the due date, we do not have to accept the rent or any other payments.

**35. TAA MEMBERSHIP.** We represent that, at the time of signing this Lease Contract: (1) we; (2) the management company that represents us; or (3) any locator service that procured you is a member in good standing of both the Texas Apartment Association and the affiliated local apartment association for the area where the dwelling is located. The member is either an owner/management company member or an associate member doing business as a locator service (whose name and address must be disclosed on page 6). If not, the following applies: (1) this Lease Contract is voidable at your option and is unenforceable by us (except for property damages); and (2) we may not recover past or future rent or other charges. The above remedies also apply if both of the following occur: (1) the Lease Contract is automatically renewed on a month-to-month basis two or more times after membership in TAA and the local association has lapsed; and (2) neither the owner nor the management company is a member of TAA and the local association at the time of the third automatic renewal. A signed affidavit from the local affiliated apartment association which attests to non-membership when the Lease Contract or renewal was signed will be conclusive evidence of non-membership. Governmental entities may use TAA forms if TAA agrees in writing.

**36. SECURITY GUIDELINES.** *We care about your safety and that of other occupants and guests. No security system is failsafe. Even the best system can't prevent crime. Always act as if security systems don't exist since they are subject to malfunction, tampering, and human error. We disclaim any express or implied warranties of security. The best safety measures are the ones you perform as a matter of common sense and habit.*

Inform all other occupants in your dwelling, including any children you may have, about these guidelines. We recommend that all residents and occupants use common sense and follow crime prevention tips, such as those listed below:

- In case of emergency, call 911. Always report emergencies to authorities first and then contact the management.
- Report any suspicious activity to the police first, and then follow up with a written notice to us.
- Know your neighbors. Watching out for each other is one of the best defenses against crime.
- Always be aware of your surroundings and avoid areas that are not well-traveled or well-lit.
- Keep your keys handy at all times when walking to your car or home.
- Do not go inside if you arrive home and find your door open. Call the police from another location and ask them to meet you before entering.
- Make sure door locks, window latches and sliding glass doors are properly secured at all times.
- Use the keyless deadbolt in your dwelling when you are at home.
- Don't put your name or address on your key ring or hide extra keys in obvious places, like under a flower pot. If you lose a key or have concerns about key safety, we will rekey your locks at your expense, in accordance with paragraph 9 of the Lease Contract.

- Check the door viewer before answering the door. Don't open the door if you don't know the person or have any doubts. Children who are old enough to take care of themselves should never let anyone inside when home without an adult.
- Regularly check your security devices, smoke alarms and other detection devices to make sure they are working properly. Alarm and detection device batteries should be tested monthly and replaced at least twice a year.
- Immediately report in writing (dated and signed) to us any needed repairs of security devices, doors, windows, smoke alarms and other detection devices, as well as any other malfunctioning safety devices on the property, such as broken access gates, burned out exterior lights, etc.
- If your doors or windows are not secure due to a malfunction or break-in, stay with a friend or neighbor until the problem is fixed.
- When you leave home, make sure someone knows where you're going and when you plan to be back.
- Lock your doors and leave a radio or TV playing softly while you're gone. Close curtains, blinds and window shades at night.
- While gone for an extended period, secure your home and use lamp timers. Also stop all deliveries (such as newspaper and mail) or have these items picked up daily by a friend.
- Know at least two exit routes from your home, if possible.
- Don't give entry keys, codes or gate access cards to anyone.
- Always lock the doors on your car, even while driving. Take the keys and remove or hide any valuables. Park your vehicle in a well-lit area.
- Check the backseat before getting into your car. Be careful stopping at gas stations or automatic-teller machines at night — or anytime when you suspect danger.

There are many other crime prevention tips readily available from police departments and others.

**37. MOVE-OUT NOTICE.** Before moving out, you must give our representative advance written move-out notice as provided below. Your move-out notice will not release you from liability for the full term of the Lease Contract or renewal term. You will still be liable for the entire Lease Contract term if you move out early (paragraph 22) except under paragraphs 10, 16, 22, 23 or 31). YOUR MOVE-OUT NOTICE MUST COMPLY WITH EACH OF THE FOLLOWING:

- We must receive advance written notice of your move-out date. The advance notice must be at least the number of days of notice required in paragraph 3 or in special provisions—even if the Lease Contract has become a month-to-month lease. If a move-out notice is received on the first, it will suffice for move-out on the last day of the month of intended move-out, provided that all other requirements below are met.
- The move-out date in your notice *[check one]:* ☐ must be the last day of the month; or ☐ may be the exact day designated in your notice. *If neither is checked, the second applies.*

- Your move-out notice must be in writing. Oral move-out notice will not be accepted and will not terminate your Lease Contract.
- Your move-out notice must not terminate the Lease Contract sooner than the end of the Lease Contract term or renewal period.
- If we require you to give us more than 30 days written notice to move out before the end of the Lease Contract term, we will give you a written reminder not less than 5 days nor more than 90 days before your deadline for giving us your written move-out notice. If we fail to provide a reminder notice, 30 days written notice to move-out is required.

YOUR NOTICE IS NOT ACCEPTABLE IF IT DOES NOT COMPLY WITH ALL OF THE ABOVE. We recommend you use our written move-out form to ensure you provide the information needed. You must obtain from us written acknowledgment that we received your move-out notice. If we terminate the Lease Contract, we must give you the same advance notice—unless you are in default.

39

**38. MOVE-OUT PROCEDURES.** The move-out date can't be changed unless we and you both agree in writing. You won't move out before the Lease Contract term or renewal period ends unless all rent for the entire Lease Contract term or renewal period is paid in full. Early move-out may result in reletting charges and acceleration of future rent under paragraphs 11 and 32. You're prohibited by law from applying any security deposit to rent. You won't stay beyond the date you are supposed to move out. All residents, guests, and occupants must surrender or abandon the dwelling before the 30-day period for deposit refund begins. You must give us and the U.S. Postal Service, in writing, each resident's forwarding address.

**39. CLEANING.** You must thoroughly clean the dwelling, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage areas. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges—including charges for cleaning carpets, draperies, furniture, walls, etc. that are soiled beyond normal wear (that is, wear or soiling that occurs without negligence, carelessness, accident, or abuse).

**40. MOVE-OUT INSPECTION.** You should meet with our representative for a move-out inspection. Our representative has no authority to bind or limit us regarding deductions for repairs, damages, or charges. Any statements or estimates by us or our representative are subject to our correction, modification, or disapproval before final refunding or accounting.

**41. SECURITY DEPOSIT DEDUCTIONS AND OTHER CHARGES.** You'll be liable for the following charges, if applicable: unpaid rent; unpaid utilities; unreimbursed service charges; repairs or damages caused by negligence, carelessness, accident, or abuse, including stickers, scratches, tears, burns, stains, or unapproved holes; replacement cost of our property that was in or attached to the dwelling and is missing; replacing dead or missing alarm or detection device batteries at any time; utilities for repairs or cleaning; trips to let in company representatives to remove your telephone, Internet, or television services or rental items (if you so request or have moved out); trips to open the dwelling when you or any guest or occupant is missing a key; unreturned keys; missing or burned-out light bulbs; removing or rekeying unauthorized security devices or alarm systems; agreed reletting charges; packing, removing, or storing property removed or stored under paragraph 13; removing or booting illegally parked vehicles; false security-alarm charges unless due to our negligence, animal-related charges under paragraphs 6 and 27;

government fees or fines against us for violation (by you, your occupants, or guests) of local ordinances relating to alarms and detection devices, false alarms, recycling, or other matters; late-payment and returned-check charges; a charge (not to exceed $100) for our time and inconvenience in our lawful removal of an animal or in any valid eviction proceeding against you, plus attorney's fees, court costs, and filing fees actually paid; and other sums due under this Lease Contract.

You'll be liable to us for: (1) charges for replacing all keys and access devices listed in paragraph 5 if you fail to return them on or before your actual move-out date, (2) accelerated rent if you have violated paragraph 32; and (3) a reletting fee if you have violated paragraph 11.

**42. DEPOSIT RETURN, SURRENDER, AND ABANDONMENT.** We'll mail you your security deposit refund (less lawful deductions) and an itemized accounting of any deductions no later than 30 days after surrender or abandonment, unless statutes provide otherwise.

You have *surrendered* the dwelling when: (1) the move-out date has passed and no one is living in the dwelling in our reasonable judgment; or (2) dwelling keys and access devices listed in paragraph 5 have been turned in to us—whichever date occurs first.

You have *abandoned* the dwelling when all of the following have occurred: (1) everyone appears to have moved out in our reasonable judgment; (2) clothes, furniture, and personal belongings have been substantially removed in our reasonable judgment; (3) you've been in default for non-payment of rent for 5 consecutive days, or water, gas, or electric service for the dwelling not connected in our name has been terminated or transferred; and (4) you've not responded for 2 days to our notice left on the inside of the main entry door, stating that we consider the dwelling abandoned. A dwelling is also "abandoned" 10 days after the death of a sole resident.

Surrender, abandonment, or judicial eviction ends your right of possession for all purposes and gives us the immediate right to clean up, make repairs in, and relet the dwelling; determine any security deposit deductions; and remove property left in the dwelling. Surrender, abandonment, and judicial eviction affect your rights to property left in the dwelling (paragraph 13), but do not affect our mitigation obligations (paragraph 32).

---

## Signatures, Originals and Attachments

**43. ORIGINALS AND ATTACHMENTS.** This Lease Contract has been executed in multiple originals, each with original signatures—one for you and one or more for us. Our rules and policies, if any, will be attached to the Lease Contract and given to you at signing. When an Inventory and Condition form is completed, both you and we should retain a copy. The items checked below are attached to and become a part of this Lease Contract and are binding even if not initialed or signed:

☐ Access Gate Addendum
☐ Additional Special Provisions
☐ Allocation Addendum for: ☐ electricity ☐ water ☐ gas
　☐ central system costs ☐ trash/recycling ☐ cable/satellite
　☐ stormwater/drainage ☐ services/government fees
☐ Animal Addendum
☐ Asbestos Addendum (if asbestos is present)
☐ Bed Bug Addendum
☐ Early Termination Addendum
☐ Enclosed Garage, Carport or Storage Unit Addendum
☑ Inventory & Condition Form
☐ Intrusion Alarm Addendum
☐ Lead Hazard Information and Disclosure Addendum
☐ Lease Contract Guaranty (_____ guaranties, if more than one)
☐ Legal Description of Dwelling (optional, if rental term longer than one year)
☐ Military SCRA Addendum
☐ Mold Information and Prevention Addendum
☐ Move-Out Cleaning Instructions
☐ Notice of Intent to Move Out Form
☑ Owner's Rules or Policies
☐ Parking Permit or Sticker (quantity:_____)
☐ Rent Concession Addendum
☐ Renter's or Liability Insurance Addendum
☐ Repair or Service Request Form
☐ Satellite Dish or Antenna Addendum
☐ TCEQ Tenant Guide to Water Allocation
☐ Utility Submetering Addendum for: ☐ electricity ☐ water ☐ gas
☑ Other Drug Free Housing
☐ Other _____

*Name, address and telephone number of locator service (if applicable—must be completed to verify TAA membership under paragraph 35):*

_____

_____

---

<div style="border">

**You are legally bound by this document. Please read it carefully.**

Before submitting a rental application or signing a Lease Contract, you may take a copy of these documents to review and/or consult an attorney.

Additional provisions or changes may be made in the Lease Contract if agreed to in writing by all parties.

You are entitled to receive an original of this Lease Contract after it is fully signed. Keep it in a safe place.

</div>

*Resident or Residents (all sign below)*

_Tara Seaton_ ___ 4/12/14
　　　　　　　　　　　　　Date signed

_____
Date signed

_____
Date signed

_____
Date signed

*Owner or Owner's Representative (signing on behalf of owner)*

_Linda Nowlin_

*Address and phone number of owner's representative for notice purposes*

512-971-1793

linda.nowlin@nowlinproperties.com

*After-hours phone number* _____

*(Always call 911 for police, fire or medical emergencies.)*

*Date form is filled out (same as on top of page 1)* _____

40